WILLIAM FAUTZ, PROSECUTOR, v. JUVENILE COURT IN AND FOR THE COUNTY OF ESSEX, JOHN H. SCOTT, CLERK OF SAID JUVENILE COURT, AND THE TOWN OF IRVINGTON, IN THE COUNTY OF ESSEX, AND EVELYN GOWER, DEFENDANTS.

Decided June 18, 1928.

Before Justices TRENCHARD, KALISCH and KATZENBACH.

For the prosecutor, *Pomerehne, Laible & Kautz), Henry Pomerehne,* of counsel).

For the defendants, *Louis A. Fast* and *John O. Muller.*

PER CURIAM.

The principal legal question involved in this case grows out of an attack made by the prosecutor upon the constitutionality of chapter 175, *Pamph. L.* 1922, *p.* 299, which act is entitled "A supplement to an act entitled 'An act providing for the hearing and determination of disputes or matters affecting the domestic relations and welfare of children, and conferring jurisdiction upon the county juvenile courts,' approved February 18th, 1918."

The statute reads: "In counties of this state where there is or may be hereafter established a county juvenile court,

said court is hereby vested with concurrnt jurisdiction to hear and determine disputes regarding the parentage, care and custody and maintenance of illegitimate children, as provided for in the act entitled 'An act for the maintenance of bastard children' [Revision of 1898]."

"2. Complaint may be made by the mother of said child, or by two disinterested citizens, without the intervention of the overseer of the poor."

The facts of the case, out of which grows the constitutional question referred to, are set forth in the return made by the judge of the juvenile court to the writ of *certiorari,* and which facts are, in substance, these: A verified complaint taken before an attorney-at-law, made by Evelyn Gower, on March 18th, 1927, was filed with the judge of the juvenile court, which complaint states that she was a single woman, and resided in the town of Irvington, New Jersey; that she was pregnant with child, likely to be born a bastard, and may become chargeable to the town of Irvington; that William Fautz, the prosecutor, is the father of said unborn child; that thereupon a warrant was issued by the judge of the juvenile court for the arrest of the prosecutor, and upon the latter's arraignment before the judge objection was made to his jurisdiction of the subject-matter of the complaint, which objection was overruled, and the trial of the cause was ordered on, and testimony was taken in support of the complaint; that the prosecutor was not sworn, nor offered any testimony in defense to the accusation, was convicted, and thereupon an order of filiation was made by the judge.

Before the enactment of the statute above quoted, proceedings relating to the maintenance of bastard children was fully provided for by an act entitled "An act for the maintenance of bastard children" (Revision of 1898), *Pamph. L., ch.* 241, *p.* 959.

This act, in substance, provides that a woman who shall be delivered of a bastard child, which shall be chargeable or likely to become chargeable to any township, or shall declare herself pregnant of child likely to be born a bastard, and to become chargeable to any township, any overseer of the poor of the township where such woman may be, or in the town-

ship wherein the legal settlement of such woman may be, may apply to a magistrate of the same county where such woman may be to make inquiry into the facts and circumstances of the case; that the magistrate shall, by examination of such woman on oath, and upon other testimony as may be offered, ascertain the father of such bastard child, or of such child likely to be born a bastard, shall issue his warrant, &c., and upon the person being arraigned before the magistrate who issued the warrant, if the accused denies he is the father of the bastard child, or such child likely to be born a bastard, he is entitled to a trial by jury if he demands it, or he may be tried by the magistrate without a jury, and, if convicted, the magistrate makes an order of filiation, from which the convicted person may appeal to the Court of Quarter Sessions of the county wherein the trial was had, in which court he is entitled to a trial *de novo,* and, if convicted, the order of filiation made by the court below may be affirmed, reduced or increased by a new order of filiation.

Furthermore, it is provided that the word "magistrate," as used in the act, shall be deemed and understood to mean and include all justices of the peace, judges of city criminal courts, police justices, recorders and all other officers having the power of a magistrate.

Turning to chapter 83, *Pamph. L.* 1918, to which chapter 175 of the act of 1922 is declared to be a supplement, we find that chapter 83 is entitled "An act to amend the title and body of an act entitled 'An act providing for the hearing and determination of disputes or matters affecting domestic relations and conferring jurisdiction upon the county juvenile court,'" approved April 2d, 1912.

The act of 1918 is an amendment of the act of 1912.

A reading of the act of 1918 discloses its prime object to be to include various acts which relate to disputes involving the domestic relation or the welfare of children, and omits any reference to the Bastardy act, which omission must be given some significance, at least, that it leads to a permissible inference that the Bastardy act was intentionally omitted.

It is also to be observed that chapter 83 of the statute of 1918 was an act to amend the title and body of the act of

1912, which was entitled "An act providing for the hearing and determination of disputes or matters affecting domestic relations and conferring jurisdiction upon the county juvenile courts, which title was amended so as to read: 'An act providing for the hearing and determination of disputes and matters affecting the domestic relations and welfare of children and conferring jurisdiction upon the county juvenile court.'"

The second section of chapter 360 of the act of 1912 declares that by the phrase "disputes involving domestic relations" is meant, *inter alia,* where the gravamen of the complaint is the failure or neglect of one member of a family to satisfy or discharge his legal obligation to the other member or members of the family; and all charges against any persons for abandonment or non-support of wives, or children, or poor relatives, under any provisions of law, and all prosecution instituted by poormaster of any municipality, based upon or arising out of the marriage state.

The title of the act of 1912, *supra,* was amended by chapter 83 of the act of 1918, *supra,* so as to read, "An act providing for the hearing and determination of disputes or matters affecting the domestic relations and welfare of children and conferring jurisdiction upon the county juvenile court," and then proceeds by section 2 to define what is meant by "disputes involving the domestic relations or welfare of children."

The phrase "welfare of children" was added to the title of the act of 1918, and the statute then proceeds to provide that the jurisdiction of the juvenile court shall extend to and include the provisions of "An act for the settlement and relief of the poor" (Revision of 1911), and "An act concerning the welfare of children," approved April 8th, 1915; and exscinds the proviso contained in section 2 of the act of 1912, which is of no vital importance as bearing on the consideration of the question involved in the instant case.

The legal propriety of the proceedings instituted against the prosecutor depends upon whether or not the assailed legislative enactment of 1922 is in compliance with the mandate of article 4, section 7, placitum 4 of the constitution, which declares as follows: "To avoid improper influences which may

result from intermixing in one and the same act, such things as have no proper relation to each other, every law shall embrace but one object, and that shall be expressed in the title."

It is quite obvious from what has been stated that the statute in question is improperly designated as a supplement to the act of 1918, whereas it is a supplement to the act of 1912, since the statute of 1918 is simply an amendment of the act of 1912, and, therefore, became incorporated in that act. But this is not fatal to the validity of the statute.

Nevertheless, it is clear from a plain reading of the title and body of the act, that the title is misleading, and that the body of the act expressed more than one object, which is not expressed in the title.

By the statutes of 1912 and 1918, *supra,* the legislature defined what was meant by the phrase "disputes or matters affecting the domestic relations and welfare of children," and by inference excluded bastard children, and, therefore, it cannot be properly said that, under the phrase just quoted, the proposed legislation is for the welfare of children born out of wedlock.

Yet, in section 1 of the statute *sub judice,* it is provided that the juvenile court shall have concurrent jurisdiction to hear and determine disputes regarding the parentage, care, custody and maintenance of illegitimate children, as provided for in an act entitled "An act for the maintenance of bastard children" (Revision of 1898).

It is to be observed that no hint of any amendment of the act of 1898 is contained in the title to the legislative enactment under discussion. In fact, the first section of the act proclaims that the provisions of the legislative enactment of 1898 is to control and govern the proceedings in the juvenile court.

The second section of the statute, as has already been indicated, is an amendment of that section of the Bastardy act of 1898, which requires the complaint to be made by the overseer of the poor, whereas by the second section of the act under review the complaint may be made by the mother of the child or by two disinterested citizens without the intervention of the overseer of the poor.

We think the second section of the statute may be exscinded in that it was enacted in violation of the constitutional provision above referred to, and the first section conferring jurisdiction on the juvenile court in bastardy cases be permitted to stand.

The conviction being had on a complaint made under section 2 of the act, the conviction is set aside, with costs.